# MARCH 10, 1943

HENRY D. MIMMS v. THE STATE.

No. 22433. Delivered March 10, 1943.

The opinion states the case.

*Fred Whitaker,* of Carthage, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Henry D. Mimms was indicted jointly with James McLane for the offense of failing to stop and render aid and from a conviction assessing a penalty of one year in the penitentiary the appeal has come to this Court.

According to the State's testimony, Mimms and McLane appeared at a "honky-tonk" situated near the Sabine River and at the junction of State Highway 43 extending north and south from Marshall to Henderson and another running in a southeasterly direction to Carthage. Bobbie, Jr., Barton, the injured party, who lived in the neighborhood had come in contact with Mimms and McLane while dancing with one of the witnesses in the case at the "honky-tonk." Appellant lived in Louisiana and appeared to have stopped at the dance hall while passing through the country with McLane. Minor disagreements between the parties are noted in the record because the injured party declined to assist the other boys in getting some whisky. After closing time, Barton was going in the direction of his home toward Carthage when overtaken by the appellant and his companion in a green automobile with one light and a Louisiana license. Other witnesses testifying described this as the car driven by appellant and his companion. As the car approached Barton, it appeared to slow up and as it got near him he turned back to look at it. The driver speeded up and picked Barton up on his bumper and carried him about one hundred yards before he fell off. At this point, the car stopped. The two occupants alighted, each from his side of the car, and approached Barton who was kneeling in the roadway suffering from injuries and they immediately engaged him in a difficulty, telling him that they were going to cut his head off. The evidence which followed was strenuously objected to by the defense and is embraced in his bill of exception No. 1. Barton testified that when they made this threat, he struck one of them but unbalanced himself and then kicked the other. Both jumped on him, cut his throat, inflicting a serious wound several inches long, from which he bled profusely. They broke his jaw, knocked out several teeth and otherwise injured him. Some hours later he was found unconscious on the highway and taken to a hospital where he regained consciousness several days later. His injuries were described as being serious and probably permanent.

From the bill of exception we quote the following:

"The injured party, Bobbie Jr. Barton, was permitted to describe the assault which according to his own testimony occurred several minutes after he was struck by the automobile in answer to questions propounded by the District Attorney;

such witness was allowed to relate in detail the manner in which he was assaulted, saying that James McLane, the driver, or the person who was under the steering wheel got out of the car and after they had engaged in a conversation struck him several blows resulting in a broken jaw with several teeth knocked out, and that his throat was cut several inches, which cut went into the bottom of his mouth; and such witness was also allowed to relate the time spent in the hospital, being some ten days."

The witness further testified to the extent of his injuries and loss of weight but this is not embraced in the testimony objected to.

In approving this bill of exception, the court does not agree that the evidence objected to related to things occurring several minutes after he was struck and refers to the statement of facts in support of his qualification. An examination of the statement of facts indicates that the occurrence detailed was immediately after the car stopped and at a time when it was the duty of the driver of the car to render all necessary aid to the injured party. His failure to do this is a constituent element of the offense charged and consequently the injuries inflicted on Barton took place at the identical time they were violating Article 1150 of the Penal Code. It is concluded that the facts related are a part of the res gestae. Furthermore, it is our opinion that this conduct shed light upon the issue involved in this prosecution because, the parties having stopped, the duty immediately devolved upon them to render all necessary assistance. A person is guilty of an offense under the statute if, after stopping, he fails to render medical assistance to the injured party, provided same be needed, or if it is requested. The facts are sufficient to show that medical assistance was needed. They were charged with the duty at all events of stopping and ascertaining if such was necessary. When they stopped, got out of the car and immediately commenced making an assault upon the injured party they showed the absence of any effort to perform their legal duty to ascertain whether or not medical assistance was necessary. The State must prove their failure in this regard, and consequently this testimony was admissible. It was evidence more potent than a mere conclusion of any witness that they did not render all necessary assistance.

Appellant testified in his own behalf, declaring that neither he nor his companion had any part in the crime charged; that immediately after leaving the dance hall where they met Bar-

ton they went across the highway to another and similar place where they stayed about an hour. When they left, he said they went in the opposite direction toward Marshall instead of on the highway where the injury was inflicted. He produced witnesses to an alibi. Another witness for the State identified their car as being in the place at about the time of the injury to Barton, and the issue was decided by the jury in favor of the State's contention.

Another question presented is that the wrong offense was charged and we have given consideration to the construction of Article 1150 of the Penal Code under which the prosecution was had and note the following language:

"Whenever an automobile, motor cylcle or other motor vehicle * * * strikes any person or collides with any vehicle containing a person, the driver of, and all persons in control of such automobile, * * * shall stop and render to the person struck * * * all necessary assistance including the carrying of such person or occupants to a physician," etc.

It will be noted that the language does not restrict the offense to a collision growing out of an accident but that it is all embracing. Consequently, an intentional collision would place upon the driver the same duty to stop and render aid as if the collision had been accidental. It may be that the facts of a case would constitute an aggravated assault or assault to murder or even the offense of murder while at the same time coming within the definition of the particular offense described in Article 1150 of the Penal Code, yet it could not have the effect of relieving appellant of the penalty imposed upon him by the jury under this indictment simply because there was found in the evidence all the constituent elements of a separate and distinct offense. We have been concerned in determining whether or not there was a violation of Article 1150 of the Penal Code and it is our conclusion that the evidence is sufficient.

Finding no error in the record, the judgment of the trial court is affirmed.